UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONALD C. REID,

      Plaintiff,

v.                          Case No: 2:16-cv-33-FtM-29CM

NAPLES COMMUNITY HOSPITAL,
INC.,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for
Summary Judgment (Doc. #15) filed on November 1, 2016.  Plaintiff
filed a Response in Opposition (Doc. #18) on November 15, 2016.
For the reasons set forth below, Defendant's Motion for Summary
Judgment is granted.

## I.

This is a Title VII case.  On December 10, 2015, Plaintiff
Donald Reid filed a two-count complaint (Doc. #2) in the Circuit
Court of the Twentieth Judicial Circuit in and for Collier County
against his then-employer, Defendant Naples Community Hospital,
Inc. (Defendant or NCH).   The Complaint alleges claims of
racial discrimination and retaliation, in violation of Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 1981.   NCH
subsequently removed the Complaint to federal court (Doc. #1) on
grounds of federal question jurisdiction and now moves for summary
judgment on both of Plaintiff's claims.

## II.

A court may grant summary judgment only if satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it goes to "a legal element of the claim under the applicable substantive law" and thus may impact the case's outcome.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004).

"The burden of establishing that there is no genuine issue of material fact lies with the moving party." Walker v. Darby, 911 F.2d 1573, 1576 (11th Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  "[O]nce the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial," the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial.  A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Id. at 1576–77.  In ruling on the motion, the court must view all evidence and draw all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).

### III.

### A.

The undisputed facts regarding Plaintiff's employment history with NCH are as follows:

In November 2011, John Griffith (Supervisor Griffith), a Caucasian male, hired Plaintiff, an African-American male and retired police officer, to begin working as a *per diem* ("as needed") security officer for NCH.  (Docs. ## 16-4; 20, p. 14.)  NCH has two main campuses, one in downtown Naples, and one in North Naples.  (Doc. #20, p. 14.)  Plaintiff completed his probationary period at the downtown campus on February 2, 2012, after which he generally worked the night shift at the North Naples campus.[1] (Id.)  Plaintiff typically worked a shift with three other individuals: a Hispanic male, a Caucasian male, and another African-American male.[2] (Id.)

On May 4, 2012, Plaintiff submitted an application to be a full-time security officer at the North Naples campus, but he was not selected for the position.[3] (Doc. #4, ¶ 18.)  Plaintiff again

---

[1] NCH facilities have three shifts: the day shift (6 a.m. to 2 p.m.); the evening shift (2 p.m. to 10 p.m.); and the night shift (10 p.m. to 6 a.m.).  (Doc. #16-1, pp. 29, 37.)

[2] At least two other Caucasian men and one other Hispanic man also regularly worked this shift.  (Doc. #20, p. 14.)

[3] The Complaint alleges that there were multiple open positions, which went to "two white males."  (Doc. #2, ¶ 18.)  Defendant has denied that allegation.  (Doc. #4, ¶ 18.)  The race of the individual(s) hired is not clear from the record.

submitted an application for an open full-time position at the North Naples campus on August 28, 2012. He was hired for that position. (Doc. #20, p. 15.) Plaintiff worked the evening shift at first, and was later transferred to the night shift. (Id.)

On March 8, 2014, Plaintiff submitted an application and interviewed for a Lead Security Officer position at the North Naples Campus. (Docs. ## 2, ¶ 21; 4, ¶ 21.) The position was not filled during the remainder of Plaintiff's time at the North Naples campus; rather, a supervisor from the downtown campus absorbed the responsibilities of that position. (Doc. #16-1, pp. 159-60.) Plaintiff submitted another application for a Lead Security Officer position on June 18, 2014, but he withdrew that application when he learned the position was for the evening shift, not the day shift. (Doc. #16-14.)

Plaintiff subsequently requested, and was granted, a transfer to the "freestanding" NCH facility.[4] (Docs. #16-1, p. 29.) He worked the night shift at that facility until October 6, 2016, when NCH terminated Plaintiff's employment.[5] (Doc. #22, p. 2.)

---

[4] It is unclear why this third location is referred to as a "freestanding location," rather than as a "main campus."

[5] Plaintiff's termination occurred approximately ten months after he filed suit and is not currently at issue here. At the February 21, 2017 final pretrial conference, Plaintiff's counsel stated that Plaintiff had filed a new EEOC charge of discrimination based on the termination, but that no right to sue letter had yet issued.

**B.**

The genesis for Plaintiff's charges of discrimination and retaliation is an incident that allegedly occurred in March 2012. The Complaint avers that Plaintiff was working with supervisor Sherrie Oaks (Supervisor Oaks) – a Caucasian female - to review the hospital's video security system when she made a comment that she "did not like black people because they come here and take jobs from white people." (Doc. #2, ¶ 16.) Plaintiff informed Supervisor Oaks that he is African American and "made [her] aware of his discomfort with her statements," after which "the conversation ended."[6] (Id.; Doc. #16-1, pp. 39-40.) Defendant denies the conversation ever took place. (Doc. #4, ¶ 16.)

According to Plaintiff, he began suffering discriminatory treatment shortly thereafter, "in retaliation of [sic] his complaining about the racist statement."[7] (Doc. #2, ¶ 17.) Specifically, Plaintiff contends that he was: i) taken off of the schedule for the entire month of April, which resulted in a loss of pay; ii) sent "to work a less desirable shift" (the night shift)

---

[6] Plaintiff testified at his deposition that Supervisor Oaks subsequently told him "she thought [he] was Caribbean, not knowing that Caribbeans [sic] were also . . . from Africa." (Doc. #16-1, p. 40.)

[7] It is unclear – but ultimately immaterial – whether Plaintiff contends that the discriminatory/retaliatory treatment began after he advised Supervisor Oaks of his discomfort with her statement, or instead after Plaintiff subsequently complained of the incident to Supervisor Griffith – a conversation Supervisor Griffith denies occurred. (Doc. #15, p. 6 n.7.)

with other "minorities" at a "different hospital" (the North Naples campus); and passed over multiple times for a promotion to a full-time position. (Id. ¶¶ 17, 18.) Plaintiff lodged a complaint against Supervisor Griffith with NCH's Human Resource Director in June 2012 (id. ¶ 19), which Plaintiff alleges caused further retaliation – namely, Plaintiff was issued unwarranted "coaching forms" and parking tickets, and his coworkers refused to "back him up" in emergency situations involving disruptive or dangerous patients. (Id. ¶¶ 19, 20.[8]) Plaintiff contends that his concerns about this treatment were ignored by his supervisors and NCH's Human Resources department. (Id.)

On April 18, 2013, Plaintiff filled out an EEOC Intake Questionnaire (Doc. #16-3) to which he attached a five-page supplement (the Supplement) detailing his allegations of discrimination and retaliation. His official EEOC Charge of Discrimination form (the EEOC Charge) (Doc. #2-1) was filed on April 30, 2013.[9]

Plaintiff alleges that he suffered further retaliatory treatment after filing the EEOC Charge. Specifically, he contends that he was unfairly issued another coaching form, as well as

---

[8] The Complaint contains two Paragraph 20s. Both are cited here.

[9] It is unclear from the record whether the Intake Questionnaire and Supplement were attached to the Charge of Discrimination. The Court presumes they were, for purposes of resolving this Motion.

corrective action forms, and that NCH failed to promote him to a supervisor position for which he was qualified. (Id. ¶ 21.)

The EEOC issued its official Dismissal and Notice of Rights form (Doc. #2-1, p. 7) on September 22, 2015, informing Plaintiff that "the EEOC is unable to conclude that the information obtained establishes violations of the statutes." This suit followed.

### III.

Defendant now moves for summary judgment. Summary judgment of Plaintiff's case is merited, Defendant argues, because: several of Plaintiff's allegations of discrimination/retaliation are barred i) under Title VII's statute of limitations or ii) for failure to exhaust administrative remedies; and iii) the remaining allegations do not amount to actionable "adverse employment actions," as required to state a claim under Title VII for both retaliation and discrimination. The Court agrees that, based on the record, summary judgment in Defendant's favor is warranted.

**A.   Time-Barred Allegations of Discrimination and Retaliation**

Defendant's first argument in support of summary judgment is that several of Plaintiff's allegations of discrimination and retaliation fall outside the limited window of time for redress that Title VII affords. "[I]n a deferral state such as Florida, . . . . [o]nly those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002) (citing 42 U.S.C. § 2000e-5(e)(1)). Defendant argues

- 7 -

that, accordingly, any discriminatory acts alleged to have occurred more than 300 days before April 30, 2013 – the date the EEOC Charge was filed - fall outside the scope of this action and thus cannot serve as a basis for Plaintiff's claims.

Plaintiff's Response in Opposition to Summary Judgment does not address Defendant's argument or raise any claim for extending the limitations period. Accordingly, the Court agrees that discriminatory acts alleged to have occurred prior to July 4, 2012 (300 days before April 30, 2013) are time-barred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."). Consequently, the following incidents – even if otherwise actionable under Title VII – cannot form the basis for Plaintiff's claims: i) Plaintiff's "removal" from the April 2012 work schedule and subsequent transfer to the North Naples campus; ii) NCH's decision not to promote Plaintiff to a full-time position in May 2012; and iii) the June 21, 2012 coaching form (Doc. #16-5).[10] Morgan, 536 U.S. at 114.

---

[10] Plaintiff's EEOC Intake Questionnaire is dated April 18, 2013. Even if that date, and not April 30, 2013 (the date the Charge was filed), is the appropriate one from which to count back 300 days, that still means that any event occurring before June 22, 2012 is time barred. Each of these events allegedly did.

B.     **Failure to Exhaust Administrative Remedies**

Defendant also moves for summary judgment as to Plaintiff's claim that NCH discriminated and retaliated against Plaintiff by not promoting him to a supervisory position in the spring of 2014. Defendant primarily argues that the evidence does not show that Plaintiff exhausted his administrative remedies for that event.[11] Plaintiff's Response opposing summary judgment does not dispute Defendant's argument or otherwise address exhaustion of remedies.[12]

It is well established that a plaintiff "must exhaust certain administrative remedies" before filing a lawsuit alleging violations of Title VII.  Joe's Stone Crabs, 296 F.3d at 1271. This includes "timely filing a charge of discrimination" setting forth the allegations of discrimination and/or retaliation.  Id. (citing 42 U.S.C. § 2000e-5(b); Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001)).  Important here, "'allegations of new acts of discrimination are inappropriate' for a post-charge judicial complaint," unless the charge was subsequently amended or a new one was filed, Duble v. FedEx Ground Package Sys., Inc., 572

---

[11] NCH also contends that Plaintiff cannot state a claim based on a failure to promote because no one was "promoted" to fill the position for which Plaintiff submitted an application; rather, Supervisor Oaks "absorbed" those responsibilities.  At his deposition, however, Plaintiff testified that, immediately after he transferred to the off-site NCH facility, his former coworker, a Caucasian man, was promoted to that position, and Supervisor Oaks "went back downtown."  (Doc. #16-1, pp. 172-73.)

[12] At the parties' final pretrial conference, Plaintiff's attorney stated that she believed all necessary administrative remedies had been exhausted.

F. App'x 889, 892 (11th Cir. 2014) (per curiam) (quoting Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279-80 (11th Cir. 2004)), or the EEOC otherwise reviewed the new claims.[13]   See Basel v. Sec'y of Def., 507 F. App'x 873, 876 (11th Cir. 2013) ("Discrete acts of discrimination that occur after an administrative filing must first be administratively reviewed before a plaintiff may obtain judicial review of those same acts.").

There is no reliable evidence before the Court indicating that Plaintiff ever amended his April 30, 2013 EEOC charge to include NCH's failure to promote him to a security supervisor position, or that the EEOC otherwise "reviewed" that claim.[14]   The Court cannot, therefore, conclude that Plaintiff has exhausted his administrative remedies.   As such, Plaintiff cannot base his Title VII claims on failures to promote occurring in 2014.   See Haugabrook v. Cason, 518 F. App'x 803, 809 (11th Cir. 2013) (per curiam) (affirming summary judgment where the plaintiff failed to

---

[13] The Eleventh Circuit has recognized a limited exception to the independent exhaustion rule for a "*retaliation* claim [that] 'grows out of an administrative charge that is properly before the court.'" Hargett v. Valley Fed. Sav. Bank, 60 F.3d 754, 762 (11th Cir. 1995) (emphasis added) (quoting Gupta v. E. Tex. State Univ., 654 F.2d 411, 414 (5th Cir. 1981)).   However, Plaintiff has not argued that the "Gupta exception" applies here.

[14] At his deposition, Plaintiff claimed he was "sure" he filed an addendum to his EEOC charge regarding the failure to promote him to a supervisor position or at least called the EEOC "in reference to" that charge.   (Doc. #16-1, pp. 171-72.)   However, no such addendum has been presented to the Court, and there is no indication on the face of either the EEOC Charge or the EEOC's Dismissal and Notice of Rights form that the EEOC investigated any post-charge conduct.

exhaust her administrative remedies as to a post-charge allegation of a failure to promote).[15]

## C.    Other "Discriminatory" and "Retaliatory" Treatment

Having found that any alleged conduct occurring prior to July 4, 2012 (or June 22, 2012) and the March 2014 failure to promote cannot support Plaintiff's Title VII claims, the Court is left with the following allegations of discrimination and retaliation: Plaintiff's November 24, 2012 parking ticket[16] (Doc. #16-12) (discrimination and retaliation); the January 9, 2013 coaching form (Doc. #16-8) Plaintiff was issued (discrimination and retaliation); Plaintiff's allegation that his coworkers routinely refused to "back him up" in emergency situations (discrimination

---

[15] Defendant's Motion for Summary Judgment does not address Plaintiff's claim that NCH retaliated against him by issuing him disciplinary "corrective action" forms.  (Doc. #2, ¶ 21.)  Two corrective action forms have been made available to the Court. The first (Doc. #16-9), dated July 10, 2013, issues Plaintiff a "1-point reminder" for a "direct act of insubordination."  The second form (Doc. #16-13), dated August 18, 2015, is a "Step 1" correction for Plaintiff's admitted "use of profanity toward [his] direct supervisor."  Even assuming that the issuance of these post-charge forms was race-motivated, and that Plaintiff did not need to independently exhaust his administrative remedies, the mere issuance of the forms does not amount to an "adverse employment action," as required to state a claim under Title VII. See discussion infra pp. 12-16.

[16] Plaintiff's grievance is not so much that the ticket was issued and placed in his file, but rather, that the parking ticket he subsequently issued to the same (Caucasian) coworker who had ticketed him was not similarly recorded in the coworker's file. Defendant's explanation is that the coworker's wife, a NCH supervisor, parked the vehicle there with permission to do so.

and retaliation)[17]; and the claim that NCH failed to address Plaintiff's concerns about disparate treatment and retaliation (discrimination).[18]  None of these incidents is sufficient to state a claim under Title VII for either discrimination or retaliation, even if motivated by discriminatory reasons.

Not all "race-motivated conduct" supports a Title VII action. <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1246 (11th Cir. 2001).  Rather, "Title VII makes it unlawful for an employer to "discriminate against any individual with respect to **his compensation, terms, conditions, or privileges of employment,**" 42 U.S.C. § 2000e-2 (emphasis added), or to discriminate against an employee because the employee has opposed a discriminatory employment practice, i.e., to retaliate against an employee.  <u>Id.</u> at § 2000e-3(a).  Making out a <u>prima</u> <u>facie</u> case of discrimination requires a plaintiff to show that "(1) []he belongs to a protected class; (2) []he was qualified to do the job; (3) []he was subjected to adverse employment action; and (4) h[is] employer treated similarly situated employees outside h[is] class more favorably." <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008) (citing

---

[17] It is unclear from the filings whether Plaintiff believes the coworkers' conduct is itself an act of discrimination/retaliation for which NCH may be held liable, or instead that liability stems from NCH's failure to correct the behavior.

[18] The Complaint also alleges that Plaintiff was placed "on detail" on January 29, 2013 (Doc. #2, ¶ 20), but Plaintiff does not explain what being placed "on detail" means or why it is discriminatory/retaliatory, nor has the Court located any documentary support for this allegation in the record.

Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam)).   "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) []he engaged in an activity protected under Title VII; (2) []he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford, 529 F.3d at 970 (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001)).   Thus, regardless of whether the claim is for discrimination or retaliation, a Title VII plaintiff must show that the conduct alleged amounted to an "adverse employment action."

"[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." Davis, 245 F.3d at 1238.   A plaintiff claiming discrimination must establish that the discriminatory conduct either caused an "ultimate employment decision" such as a "termination, failure to hire, or demotion," Crawford, 529 F.2d at 970 (citation omitted), or caused the employee to suffer "a serious and material change in the terms, conditions, or privileges of employment." Id. at 970-71 (citation omitted).   A plaintiff alleging retaliation bears a lighter burden but still must "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation omitted);

see also Crawford, 529 F.3d at 973 ("Under the holding of Burlington, the type of employer conduct considered actionable has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related."). Requiring material adversity helps separate "trivial harms" from "significant" ones. Burlington, 548 U.S. at 68. And considering the "reactions of a *reasonable* employee" allows for "[a]n objective standard [that] is judicially administrable." Id.

The Court concludes that "no reasonable jury could view the relatively minor incidents suffered by [Plaintiff] as the kind of adverse employment action that Title VII was intended to redress." Davis, 245 F.3d at 1245–46. None of the conduct alleged constitutes had a material adverse effect on Plaintiff[19] or

---

[19] Plaintiff testified at his deposition that he suffered a "minor heart attack" in 2013 (Doc. #116-1, p. 117), and the parties' Joint Pretrial Statement states that Plaintiff seeks "compensat[ion] for damages as a result of Plaintiff having a minor heartache as a result of the work-related stress." (Doc. #20, p. 13.) According to his medical records, Plaintiff did visit his physician on July 2, 2013 and complained of two recent instances of chest pain he had suffered while on the job. (Doc. #21-2, p. 26 ("[Plaintiff] has been having some stress on the job !!").) The report does not diagnose a heart attack, but rather, states that "Patient has angina. One has to rule out underlying coronary artery disease given his risk factors and symptoms." (Id. p. 27.) Recurring chest pain may very well satisfy Burlington's materiality prong. But even assuming Plaintiff could prove that his "heartache" was caused by the conduct he alleges violates Title VII (something he did not raise in his Complaint or Response in Opposition to Summary Judgment), he cannot satisfy Burlington's objectivity prong.

constitutes an "ultimate employment decision."  The January 9, 2013 coaching form merely documented that Plaintiff had failed to adequately communicate his location to his Lead Officer upon completing his duties.  According to NCH's Handbook, disciplinary "[p]oints are not associated with a coaching" (Doc. #16-5, p. 23), and Plaintiff admits that he was not issued any corrective action points and experienced no changes to the terms or conditions of his employment as a direct result of receiving the form.[20]  (Doc. #16-1, pp. 73, 99.)  It may be, as Plaintiff contends, that the critique conveyed in the coaching form was undeserved, and perhaps even racially motivated.  Nevertheless, "[e]mployer criticism, like employer praise, is an ordinary and appropriate feature of the workplace" and typically not actionable under Title VII.

---

[20] In his EEOC Charge, Plaintiff contends that the coaching form was issued "to build a paper trail so that [NCH could] terminate [his] employment."  (Doc. #2-1, p. 1.)  The coaching form does state that it will remain in Plaintiff's personnel file, and NCH clearly does take "performance concerns" into consideration when determining whether to promote an employee.  (Doc. #15, p. 21; see also Doc. #16-16, ¶ 15.)  It is thus possible that the coaching form, though "non-disciplinary," could have played a minor role in NCH's "failure to promote" Plaintiff to a supervisory position. But, as discussed, that failure to promote is not properly before the Court.  Even if it were, "[a] negative evaluation that otherwise would not be actionable will rarely, if ever, become actionable merely because the employee comes forward with evidence that his future prospects have been or will be hindered as a result." Davis, 245 F.3d at 1243; see also Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1216 (11th Cir. 2008) ("A Title VII discrimination claim 'rarely may be predicated merely on employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no **tangible impact** on the terms, conditions, or privileges of employment.'" (emphasis added) (quoting Davis, 245 F.3d at 1242)).

Davis, 245 F.3d at 1242 ("Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance.").

As for the non-monetary, non-disciplinary parking ticket and the alleged refusal of Plaintiff's coworkers to "back him up," the Court again fails to see how either of these materially affected Plaintiff in an objectively-adverse manner.   To the contrary, these are examples of "those petty slights or minor annoyances that often take place at work and that all employees experience" and for which Title VII does not purport to provide redress.[21] Burlington, 548 U.S. at 68; see also Gillis v. Ga. Dep't of Corr., 400 F.3d 883, 888 (11th Cir. 2005) ("Title VII is 'neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" (quotation omitted)).

Because Plaintiff has failed to present sufficient evidence for a reasonable jury to find that he suffered any "adverse employment action" between July 4, 2012 and April 30, 2013, and because an "adverse employment action is an indispensable element

---

[21] Because there are no actionable allegations of discrimination or retaliation before the Court, any alleged failure by NCH to address Plaintiff's concerns cannot support a Title VII claim.

of a Title VII plaintiff's case," Davis, 245 F.3d at 124, the Court must grant summary judgment in Defendant's favor.

Accordingly, it is hereby

**ORDERED:**

1.   Defendant's Motion for Summary Judgment (Doc. #15) is **GRANTED.**

2.   Plaintiff's February 21, 2017 oral motion to amend the Complaint to include allegations regarding Plaintiff's termination is **DENIED.**

3.   Defendant's Motion to Strike (Doc. #19) Plaintiff's Response in Opposition to Summary Judgment (Doc. #18) and Defendant's three Motions in Limine (Docs. ## 21-23) are **DENIED AS MOOT.**

4.   The Clerk is directed to enter judgment in favor of Defendant Naples Community Hospital, Inc., to terminate all deadlines, and to close the case.

**DONE and ORDERED** at Fort Myers, Florida, this 13th day of March, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

- 17 -